IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAURICE M. IRBY, 23782, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 25-cv-1756-DWD |
| ) | |
| B. GUETERSLOH, ) | |
| C/O NORTH, ) | |
| C/O MARCUM, ) | |
| C/O KERN, ) | |
| JOHN DOES 1-4, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM & ORDER

**DUGAN, District Judge:**

Plaintiff Maurice Irby, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Lawrence Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights at Menard Correctional Center. Specifically, Plaintiff alleges that the defendants used excessive force against him in December of 2024 without cause. The Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se*

complaint are to be liberally construed. Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009).

## THE COMPLAINT

On December 20, 2024, Plaintiff alleges that he was asleep in his cell when Defendant Guetersloh approached and asked about his prior cell assignment. Plaintiff explained that he had been placed in the cell after returning from a visit to the outside hospital for a torn ACL. Gutersloh left, and Defendant Kern approached a few minutes later and asked Plaintiff to pack his belongs to be relocated. Plaintiff complained that the identified cell was upstairs, and that he could not traverse the stairs. Kern returned about five minutes later and indicated Plaintiff should still pack up because he was being moved to the healthcare unit. Plaintiff asked for help unplugging his television and began to prepare. Less than five minutes later Kern came back with a wheelchair and asked Plaintiff if he was ready. (Doc. 1 at 6). Plaintiff voiced that he was not ready yet, and Kern displayed his handcuffs and called for backup.

Plaintiff alleges that Guetersloh, North, and Marcum came, and he was again instructed to cuff-up. Guetersloh then directed North, Marcum, and Kern to deploy pepper spray. Plaintiff alleges that each time he attempted to approach the front of the cell to be handcuffed, they deployed additional spray. Finally, when Plaintiff was handcuffed Gutersloh removed him from the cell and slammed his face into the wall. He claims Guetersloh threw the wheelchair out of the way and insisted he walk, despite his hearty protest that he could not do so on his injured knee. (Doc. 1 at 7). John Does 1 and

2 escorted Plaintiff to the healthcare unit, and they ignored his requests for the wheelchair and forced him to walk in extreme pain.

At the healthcare unit, Plaintiff repeated his request for a wheelchair to no avail. He was not decontaminated from the pepper spray, nor was he treated from being slammed into the wall. (Doc. 1 at 7-8). Plaintiff was forced to walk to the North 2 cellhouse on his injured leg. Upon arrival, he was placed in a holding room with John Does 3 and 4. He alleges the two battered him while he was handcuffed to a stool. (Doc. 1 at 8). During the assault, Plaintiff was choked, kneed in the temple, punched in the face, and struck on his injured knee, among other things. Following the assault, Plaintiff alleges he was placed in a flooded cell and did not receive medical care for 6 days. (Doc. 1 at 8). He claims that when he was eventually seen, the nurse did not view any of his injuries, such as problems with his eyes, swelling on his face, and scratches around his neck. Plaintiff alleges he exhausted a grievance about this issue. Plaintiff seeks monetary compensation, and he asks that Gutersloh and John Does 3 and 4 be charged with assault and battery.

Based on the allegations in the Complaint the Court designates the following Claims:

> **Claim 1:** Eighth Amendment excessive force claim against Defendants Kern, Marcum, and North for deploying pepper spray on December 20, 2024;
>
> **Claim 2:** Eighth Amendment excessive force claim against Defendants Guetersloh, John Doe 3 and John Doe 4 for physically assaulting Plaintiff on December 20, 2024;

> **Claim 3:** Eighth Amendment deliberate indifference claim against John Does 1 and 2 for forcing Plaintiff to walk to the medical unit without a wheelchair on his knee injury.

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

An Eighth Amendment excessive force claim requires an inquiry into "whether force was applied in a good-faith effort to maintain or restore discipline, or [whether it was] applied maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). The "core judicial inquiry" for an excessive force claim is not the severity of the injury, but whether the force used was 'malicious and sadistic.' *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). Plaintiff's allegations in Claims 1 and 2 are plainly sufficient to proceed against Defendants Kern, North, Marcum, Guetersloh, and John Does 3 and 4. Plaintiff has already provided clear physical descriptions of John Does 3 and 4, so the Warden of Menard will be added to this case in official capacity and will be directed to provide responsive information.

In Claim 3, Plaintiff faults John Does 1 and 2 for escorting him to the healthcare unit without a wheelchair. He claims he asked them for a wheelchair and that the lack of a wheelchair caused pain, but the allegations are a fleeting mention relative to the rest of

the complaint. He does not indicate if he had a wheelchair or crutch permit, if these two were familiar with his condition, what he or other staff specifically said to these two, or if he suffered an injury specific to this particular walk. He also does not explain how far the walk was, if he had to traverse stairs, or if he visibly displayed pain. Without more information the actions of John Doe 1 and 2 may just be negligence, or they might cross into the territory of deliberate indifference. As pled, the claim will be dismissed as insufficient.

## MOTION FOR RECRUITMENT OF COUNSEL (DOC. 3)

In addition to filing the complaint, Plaintiff also filed a Motion for Recruitment of Counsel (Doc. 3). There is no right to the appointment of counsel in civil matters. *Romanelli v. Suliene*, 615 F.3d 847, 851 (7th Cir. 2010). When presented with a request to appoint counsel, the Court must consider: "(1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself [.]" *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007). The first inquiry "requires the indigent litigant to reasonably attempt to get a lawyer." *Thomas v. Wardell*, 951 F.3d 854, 859 (7th Cir. 2020). Determining whether a plaintiff has made reasonable efforts to recruit counsel himself "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021).

If plaintiff has demonstrated an attempt to secure counsel, then the Court turns to considering the complexity of the case and plaintiff's competence to represent himself. "Some of the circumstances that require judicial consideration are the phase of the

litigation, if the prisoner has been transferred between facilities, if the claims involved the state of mind of the defendant such as those involving deliberate indifference, and if the case involves complex medical evidence, including expert testimony." *Thomas v. Wardell*, 951 F.3d 854, 860 (7th Cir. 2020); *see Eagan*, 987 F.3d at 682–83.  As for competence, "A judge will normally consider 'the plaintiff's literacy, communication skills, educational level, and litigation experience' along with any evidence in the record 'bearing on the plaintiff's intellectual capacity and psychological history.' But these are merely factors that are ordinarily relevant. No one factor is 'necessary or conclusive.'" *Jones v. Anderson*, 116 F.4th 669, 675-76 (7th Cir. 2024) (internal citations omitted).  The court must examine specifically the plaintiff's ability to litigate the case, as opposed to the ability of any "jailhouse lawyer" assisting the plaintiff.  *Eagan*, 987 F.3d at 682.  The Court may also consider the potential merit of the claims, and the scarcity of available counsel.  *Watts v. Kidman*, 42 F.4th 755 (7th Cir. 2022).

      Here, Plaintiff alleges that he attempted to recruit his own counsel, and he provided a single letter as proof.  Plaintiff should provide additional proof of efforts to contact at least 2 more individual attorneys or firms.  If he does not have response letters, he can at least provide proof of postage for the outgoing letters to the firms.  Aside from his own efforts, Plaintiff has done little to explain why he believes he needs assistance to adequately represent his interests.  He explains that he is an individual who has been incarcerated for 26 years and has limited funds or family support, but these factors do not go to his physical and intellectual competence to proceed on his own.  This case is still at the earliest stage, Plaintiff's complaint was clear and well organized, and he even

included good descriptions of the John Doe defendants. The next steps will include the Court conducting service, and the Warden of Menard providing information about John Does 3 and 4. There will be little for Plaintiff to do until a scheduling order is entered opening limited discovery. For now, Plaintiff is competent to proceed. If he wishes to renew his request for counsel later in this case, he should clearly explain the difficulties he faces in proceeding at that stage of the case without assistance.

### MOTION FOR DOCUMENTS (DOC. 4)

With the complaint, Plaintiff has moved for production of documents surrounding the events on December 20, 2024. In due time Plaintiff will be able to request these materials from Defendants, but for now discovery will remain closed until the defendants have answered and the Court issues a scheduling order.

### DISPOSITION

**IT IS HEREBY ORDERED THAT Claims 1 and 2** survive against Defendants Kern, Marcum, North, Guetersloh, John Doe 3 and John Doe 4. By contrast, **Claim 3** against Defendants John Does 1 and 2 is dismissed as insufficient, and the Clerk of Court shall **TERMINATE** Defendants John Does 1 and 2.

The Clerk shall **ADD** the Warden of Menard in official capacity only to identify John Does 3 and 4. The Warden shall review Plaintiff's description of these individuals in the Complaint at page 8 and shall provide responsive information to Plaintiff **within 30 days of counsel entering an appearance for the Warden**. The Warden shall also file a notice of compliance. **Plaintiff shall then have 21 days from receipt of the information**

to move to substitute named parties for John Does 3 and 4. Failure to do so may result in the dismissal of John Does 3 and 4.

The Clerk of Court is **DIRECTED** to prepare for Defendants Kern, North, Marcum, Guetersloh and Warden of Menard (official capacity to identify John Does 3 & 4): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Administrative Order No. 244, Defendant need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Recruitment of Counsel (Doc. 3) is **DENIED** without prejudice, and his Motion for Production (Doc. 4) is **DENIED** as premature.

**IT IS SO ORDERED.**

**DATED:** October 22, 2025

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.